# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DEBRA BEY,

        Plaintiff,

    v.                         **Case No. 2:16-cv-1167**
                                      **JUDGE GEORGE C. SMITH**
WALKERHEALTHCAREIT, LLC,        **Magistrate Judge Jolson**
*et al.*,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss of WalkerHealthCareIT, LLC, WalkerSearchGroup, LLC,[1] Tifiany Walker, and Gregory Walker (collectively, "Walker Defendants") (Doc. 51) and the Motion to Dismiss of Encore Health Resources, LLC ("Encore") (Doc. 52). The Walker Defendants have also filed a Motion to Strike consent forms filed by Plaintiff Debra Bey on behalf of other individuals seeking to opt in to Bey's proposed collective action under the Fair Labor Standards Act (Doc. 64). The motions are fully briefed and ripe for disposition. For the following reasons, the Walker Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**; Encore's Motion to Dismiss is **DENIED**; and the Walker Defendants' Motion to Strike is **DENIED**.

---

[1] Defendants have asserted, and Plaintiff does not dispute, that WalkerHealthCareIT, LLC and WalkerSearchGroup, LLC are in fact the same entity, in that WalkerSearchGroup, LLC changed its name to WalkerHealthCareIT, LLC in 2012. The Court therefore refers to the entity only by its current name in this Opinion.

# I.    FACTUAL BACKGROUND

For the purpose of the motions to dismiss, the Court accepts the following facts alleged by Bey as true.  Bey was employed by the Walker Defendants and Encore as an ATE Go-Live Support Consultant ("ATE"), stationed at OhioHealth in the state of Ohio, for some period of time "during the applicable statute of limitations period."  (Doc. 49, Am. Compl. ¶ 6).  Although Bey's employment contract (attached to her Amended Complaint) references WalkerHealthCareIT as her employer and refers to Encore as a "client" (Doc. 49-2, Employment Contract), Bey alleges that all defendants, in a "joint business effort," recruited, placed and managed ATEs at various healthcare entities across the country, including OhioHealth, for limited periods of time, to assist with the implementation and administration of integrated health computer systems.  Projects varied in length but, on average, lasted a few weeks at a time.  (*Id.* ¶ 7).  Bey's primary duty as an ATE was to provide first line troubleshooting relating to the implementation of Defendants' software system, and other duties were to reinforce training for software programs and provide "at-the-elbow" IT support.  (*Id.* ¶¶ 22, 23).

Although Bey alleges she was jointly employed by all defendants, she describes the WalkerHealthCareIT as being responsible for recruiting and hiring ATEs, arranging their travel and expense reimbursement, and issuing their paychecks; and Encore would manage the day-to-day duties of ATEs, such as conducting orientation and training sessions, setting ATE work schedules, approving and maintaining ATEs' time and expense reports, and evaluating the ATE's performance.  (*Id.* ¶¶ 8–9, 15–16).  Each ATE was assigned to a specific Encore Team Manager or Project Manager who served as the first point of management contact for the ATE.  (*Id.* ¶ 17).

Bey alleges that ATEs were assigned a schedule of at least 45 hours per week.  (*Id.* ¶ 21).  However, ATEs were allegedly not paid in compliance with state and federal labor laws in two

ways: (1) ATEs were paid only for hours worked that were also billed to Defendants' clients. ATEs were not compensated for hours worked that were not billed to clients (*id.* ¶ 25, Doc. 49-2, Employment Contract at 1); and (2) for all hours for which ATEs were paid, they were compensated at the standard "straight time" hourly rate of pay, including all hours over 40 per workweek, which should have been compensated at the 1.5 overtime premium rate. (Doc. 49, Am. Compl. ¶ 26; Doc. 49-2, Employment Contract at 1). Bey also alleges that Defendants did not keep accurate records of the hours ATEs actually worked; rather, ATEs were required to record only the hours they had been scheduled to work. (Doc. 49, Am. Compl. ¶ 28). All of these actions are alleged by Bey to violate both the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the Ohio Fair Minimum Wage Standards Act, R.C. § 4111.01 *et seq.* (the "OMFWSA").

Anticipating that Defendants may argue that ATEs qualify for one or more exemptions from the FLSA and OMFWSA, Bey also alleges that ATEs do not so qualify inasmuch as they did not have management as their primary duty; did not have a primary duty that required use of discretion or independent judgment; did not perform work requiring advanced knowledge in a field of science or learning; did not perform work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor; and were not employed as computer systems analysts, computer programmers, software engineers, or similarly skilled computer employees. (*Id.* ¶¶ 29–33).

## II. PROCEDURAL HISTORY

Bey commenced this action on December 13, 2016, asserting individual claims on her own behalf, and also seeking to act as representative plaintiff for a collective action under the FLSA and a Rule 23 class action under the OFMWSA. (Doc. 1, Compl.) The Walker Defendants and Encore filed motions to dismiss (Docs. 14, 32), but in opposing those motions,

Bey also sought leave to amend the Complaint. (Docs. 21, 37). To further the Court's preference to allow cases to reach the merits rather than through early dismissal, the Court granted leave for Bey to amend her Complaint to cure whatever deficiencies Plaintiff believed existed. (Doc. 48). Bey filed her Amended Complaint on September 9, 2017, which mooted the previous motions to dismiss. (Docs. 49, 50). The Walker Defendants and Encore now move again to dismiss Bey's Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Docs. 51–52).

Shortly after Bey filed her Amended Complaint, she also began periodically filing consent forms executed by other ATEs who wished to join Bey's proposed FLSA collective action. (Docs. 59–60, 65–66, 68–70, 73–74, 78–80). Bey has not at this time filed a motion under 29 U.S.C. § 216 seeking conditional certification of the proposed collective action. The Walker Defendants have moved to strike the consent forms as premature prior to the Court's conditional certification of the collective action, and to enjoin Bey from filing any further consent forms until the Court grants conditional certification. (Doc. 64).

## III.    MOTIONS TO DISMISS

### A.    Standard for dismissal under Rule 12(b)(6)

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

## B. Walker Defendants' Motion to Dismiss

The Walker Defendants argue that Bey's Amended Complaint remains deficient for several reasons, which the Court will address in turn.

### 1. Bey's Amended Complaint is not deficient for making allegations on "information and belief."

The factual allegations of Bey's Amended Complaint are prefaced with a general statement that her claims are brought "upon personal belief as to herself and her own acts, and as for all other matters, upon information and belief, and based upon the investigation made by her counsel." (Doc. 49, Am. Compl. at 1). The Walker Defendants argue that, as a result of this statement, Bey's Amended Complaint must be dismissed because "it is impossible to delineate which of her seventy-nine (79) paragraph allegations are based upon (1) her own personal

knowledge, (2) her personal belief, (3) some other information and belief, or (4) investigation by her counsel." (Doc. 51, Walker Mot. at 8). According to the Walker Defendants, this constitutes an "utter failure to differentiate between fact and speculation" and "precludes any opportunity to infer sufficient facts that 'raise a right to relief above the speculative level.'" (*Id.*, quoting *Twombly*, 550 U.S. at 555-56).

The Court disagrees. Allegations made on information and belief have been held permissible, even after the *Twombly* and *Iqbal* decisions. *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (Graham, J.) (quoting Charles A. Wright and Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2013)). Whether allegations are "speculative" depends on whether the plaintiff sets forth sufficient factual content, rather than mere conclusory statements, that demonstrate a plausible right to relief. Allegations do not become "speculative" merely because they are made on information and belief rather than personal knowledge. *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F.Supp.2d 758, 765 (S.D. Ohio 2010).

Nor have the Walker Defendants offered any authority requiring that defendants or the Court need to be able to delineate specifically which allegations are based on knowledge versus belief. The purpose of a complaint is to provide defendants with "a short and plain statement of the claim showing that the pleader is entitled to relief," not to provide a detailed outline of the evidence plaintiffs have in their possession at the outset of an action. Fed. R. Civ. P. 8(a). As explained above, the Court's task at this early stage is to evaluate whether Bey has set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, the Court will evaluate Bey's allegations based on their substantive factual content.

## 2.    Bey has sufficiently alleged enterprise coverage under the FLSA.

Not all employees are governed by the FLSA's minimum wage and overtime provisions; rather, only those who are engaged in interstate commerce as defined by 29 U.S.C. §§ 206(a) and 207(a) are protected.  Employees can meet these requirements in one of two ways: "First, employees may be employed in an enterprise engaged in commerce or the production of goods for commerce and thus enjoy 'enterprise coverage.'  Second, employees may themselves be engaged in commerce or in the production of goods for commerce, enjoying 'individual coverage.'"  *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 802-03 (N.D. Ohio 1996); *see also Usery v. Yates*, 565 F.2d 93, 96 (6th Cir. 1977).

The Walker Defendants argue, and Bey does not dispute, that she has not alleged individual coverage.  Bey argues, however, that she has sufficiently alleged enterprise coverage.  An enterprise is "engaged in commerce or in the production of goods for commerce" sufficient to provide coverage for its employees if it (1) has "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).  "Commerce" is further defined by the FLSA as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

"Courts have consistently construed the FLSA liberally to apply to the farthest reaches consistent with congressional direction."  *Kowalski*, 920 F. Supp.at 803 (citing *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985)).  As a result, "[c]ourts in this circuit have not required plaintiffs to allege [the enterprise coverage] element of a FLSA claim in detail."  *Simpson v. Baskin*, No. 3:17-CV-01077, 2018 WL 1070897, at *6 n.6 (M.D.

Tenn. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018). *See Burman v. Everkept, Inc.*, No. 1:15–CV–596, 2017 WL 1150664, at *3, 5 (W.D. Mich. Mar. 27, 2017) (holding that plaintiffs had adequately pleaded enterprise coverage where they alleged that defendant was an enterprise engaged in interstate commerce with annual sales of not less than $500,000, and described their role as "residential pick-up drivers' for defendant's "garbage, recycling, and yard waste collection business"); *Duby v. Shirley May's Place, LLC*, No. 16–11443, 2017 WL 1021062, at *5 (E.D. Mich. Mar. 16, 2017) (plaintiff's allegations that he handled and sold goods "moved in or produced for interstate commerce" as a retail clerk in a convenience store were sufficient to establish that his employer was engaged in commerce at the motion to dismiss stage); *Gulden v. Menages, Inc.*, No. 3:14–cv–1041, 2014 WL 4232791, at *3 (M.D. Tenn. Aug. 25, 2014) (concluding plaintiff had sufficiently alleged enterprise coverage by claiming that he "handled and unloaded goods from outside the state to be sold to club patrons").

Bey's factual allegations meet this standard. She alleged that WalkerHealthCareIT, LLC's "main function was to recruit and hire individuals to assist hospitals and healthcare organizations with their implementation and administration of an integrated health computer system" and that, from its principal place of business in Michigan, WalkerHealthCareIT provides services to customers nationwide. (Doc. 49, Am. Compl. ¶ 8). Further, all Defendants placed Bey and other ATEs at various healthcare entities across the country to assist with the implementation and administration of integrated health computer systems. (*Id.* ¶ 7). These facts, if true, are sufficient to establish that WalkerHealthCareIT has "employees engaged in commerce."

It is true, as pointed out by the Walker Defendants, that Bey did not explicitly allege the second prong of the enterprise coverage definition: that WalkerHealthCareIT has an annual gross volume of sales made or business done of at least $500,000 as required by 29 U.S.C. § 203(s)(1)(A)(ii). However, Bey did allege that Defendants "are engaged in commerce within the meaning of [ ] 29 U.S.C. § 203(s)(1)(A)." (Doc. 49, Am. Compl. ¶ 60). And at least one district court in this Circuit has held that incorporating 29 U.S.C. § 203(s)(1)(A) into a complaint is sufficient to allege the annual gross sales criterion. *Gulden, Inc.*, 2014 WL 4232791 at *3. "These allegations are not elaborate, but they do suffice for a plausible enterprise coverage claim under the FLSA." *Duby*, 2017 WL 1021062, at *2.

### 3.     Bey need not identify any specific week in which she was not paid an overtime premium to which she was entitled.

Citing only out-of-Circuit authority, the Walker Defendants argue that Bey must identify at least one week in which she worked more than 40 hours but was not paid 1.5 times her regular rate for those hours. (Doc. 51, Walker Defs.' Mot. at 14) ("FLSA plaintiffs 'should be able to specify at least *one* workweek in which they worked in excess of forty hours and were not paid overtime wages.'" (quoting *Landers v. Quality Commc'ns*, 771 F.3d 638, 646 (9th Cir. 2014)).

However, courts in this Circuit have expressly rejected the specificity requirements that the Walker Defendants seek to impose:

> District courts within the Sixth Circuit have generally found that factual allegations that a plaintiff was employed by the defendant, worked regularly and repeatedly in excess of a forty hour week, and failed to receive overtime compensation for each hour worked in excess of forty hours per week was sufficient to state a claim for relief under Fed. R. Civ. P. 8."

*Comer v. Directv, LLC*, No. 2:14-CV-1986, 2016 WL 853027, at *9 (S.D. Ohio Mar. 4, 2016) (quoting *Mabry v. DIRECTV, LLC*, No. 3:14-CV-00698, 2015 WL 5554023 (W.D. Ky. Sept. 21, 2015) and distinguishing *Landers*).

Bey alleges that ATEs were scheduled to work 45 hours per week, but were paid only their standard hourly rate even for hours worked beyond 40 in a workweek. (Doc. 49, Am. Compl. ¶¶ 21, 26, 34). She further alleges that this situation occurred "routinely" and "throughout the relevant period." (*Id.* ¶ 63–64). Under the less-stringent standard used by courts in the Sixth Circuit, these allegations are sufficient to plausibly allege that she was not paid overtime compensation in violation of the FLSA.

### 4. Bey has sufficiently alleged willfulness to trigger the FLSA's three-year limitation period.

The FLSA typically carries a two-year statute of limitations, but the limitations period may be extended to three years if the employer's violation was willful. 29 U.S.C. § 255(a). The Walker Defendants argue that Bey's allegations of willfulness are conclusory and insufficient to extend the limitation period to three years. To establish willfulness, the plaintiff must demonstrate that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff cannot make only a conclusory allegation that a defendant acted willfully. *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)). But in addition to unquestionably conclusory allegations such as "Defendants' actions were willful and not in good faith," (Doc. 49, Am. Compl. ¶ 66), Bey also alleges that Defendants did not keep accurate records the hours ATEs actually worked. (*Id.* ¶ 28). Rather, Defendants had a policy of requiring ATEs to record only the hours they had been scheduled to work, and not to record hours worked but not billed to the client. (*Id.*).

Several courts have held that allegations of recordkeeping violations may bolster a plaintiff's allegations of willfulness. *Petty v. Russell Cellular, Inc.*, No. 2:13-CV-1110, 2014 WL 340417, at *2–3 (S.D. Ohio Jan. 30, 2014) (Graham, J.) (quoting *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 844 (6th Cir. 2002)); *Dowd v. Directv, LLC*, No. 14-CV-14018, 2016 WL 28866, at *6 (E.D. Mich. Jan. 4, 2016); *Miller v. AT & T Corp.*, No. 1:13-CV-01422, 2013 WL 5566698, at *2 (N.D. Ohio Oct. 9, 2013). *See also Stein v. HHGREGG, Inc.*, 873 F.3d 523, 538 (6th Cir. 2017) (reversing dismissal of claim for willful FLSA violation where plaintiffs alleged that defendants' managers "were aware of and tacitly or knowingly approved of the practices at issue."). In light of Bey's non-conclusory allegations of recordkeeping violations, the Court is satisfied that Bey has sufficiently alleged that the Walker Defendants acted willfully in violating the FLSA.

5.    **Bey has sufficiently alleged that Tifiany Walker and Gregory Walker were her employers under the FLSA.**

Under 29 U.S.C. § 203(d), the FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." The Sixth Circuit has noted that the FLSA contemplates the existence of more than one "employer" that can be simultaneously responsible for FLSA obligations. *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994). In particular, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991) (quoting *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983)). *See also U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995) ("a corporate officer who has operational control of the corporation's covered enterprise is an 'employer' under FLSA, along with the corporation itself.").

The Walker Defendants argue that Bey has not sufficiently alleged that Tifiany Walker and Gregory Walker were her "employer" within the meaning of the FLSA. But, as noted above, Bey has sufficiently alleged that WalkerHealthCareIT is an employer under the FLSA, and no party has disputed that an employment relationship existed between Bey and WalkerHealthCareIT. Thus, all Bey must plead in order to establish that Tifiany Walker and Gregory Walker were also her employers is that they are corporate officers with operational control of WalkerHealthCareIT.

Here, Bey alleges that Tifiany and Gregory are both owners of WalkerHealthCareIT and are its CEO and Senior Managing Partner, respectively; that they have authority to hire, fire, set compensation for, and direct and supervise the work of employees; that they had authority to make decisions regarding wage and hour classifications (including decision to classify ATEs as exempt from the FLSA's overtime provisions); and that they had authority to implement wage and hour policies (including decision to not pay ATEs an overtime premium). (Doc. 49, Am. Compl. ¶¶ 10–11). Courts in this Circuit routinely find these types of facts sufficient to establish employer liability. *Fegley*, 19 F.3d at 1131; *Dole*, 942 F.2d at 966; *Cole,* 62 F.3d at 778; *Duby*, 2017 WL 1021062, at *5–6; *Cook v. Carestar, Inc.*, No. 2:11-CV-00691, 2013 WL 5477148, at *10 (S.D. Ohio Sept. 16, 2013) (Marbley, J.). Accordingly, Bey has sufficiently alleged that Tifiany Walker and Gregory Walker are employers for the purpose of her FLSA claims.

### 6. Bey does not assert a claim for recordkeeping violations.

The Walker Defendants argue that it is somehow improper for Bey to include allegations regarding WalkerHealthCareIT's failure to keep accurate records of the hours worked by Bey and other ATEs, because the FLSA does not create a private right of action for recordkeeping violations. While it is true that employees cannot bring such a claim, *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002), Bey has not attempted to do so. Rather, as

12

Bey explained as far back as her opposition brief to the Walker Defendants' first motion to dismiss (Doc. 21, Bey's Resp. at 18–19), she included her recordkeeping allegations in support of her claim that Defendants' failure to pay overtime wages was willful. And as discussed *supra*, recordkeeping violations are, in fact, relevant to the willfulness analysis. There is therefore no recordkeeping claim to dismiss.

### 7. Bey is not entitled to equitable relief under the FLSA.

Equitable relief is not available to private plaintiffs for FLSA violations and may only be obtained by the Secretary of Labor. *Lorillard v. Pons*, 434 U.S. 575, 581 (U.S. 1978). Yet, in contrast to Bey's appropriate omission of any express request for relief based on recordkeeping violations, Bey's Amended Complaint does expressly seek equitable relief. (Doc. 49, Am. Compl. ¶¶ 68–69) ("Defendants are liable . . . for . . . equitable relief, pursuant to 29 U.S.C. § 216(b)" and "[Bey is] entitled to injunctive relief to prevent Defendants from continuing their violation of the FLSA and other appropriate class-wide injunctive relief.").

Bey previously stated in the earlier round of motion briefing that she is not seeking equitable relief (Doc. 21, Bey's Resp. at 19), yet retained these allegations when she later filed her Amended Complaint. In the current round of briefing, she again states that "Plaintiff has not attempted to state a separate claim for equitable relief," and that she only "seeks actual damages, liquidated damages, reasonable attorneys' fees, costs and expenses," but does not address the requests for equitable relief in ¶¶ 68–69.

The Court understands Bey to have conceded any claims for equitable relief under the FLSA, which are not viable in any case, and therefore the Walker Defendants' Motion to Dismiss is granted to that extent.

### 8. Bey has sufficiently alleged her claims under the OMFWSA.

As acknowledged by all parties, "Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006) (Sargus, J.), *aff'd*, 225 F. App'x 362 (6th Cir. 2007). *See also Kollstedt v. Princeton City Sch. Bd. of Educ.*, No. 1:08-C-V00822, 2010 WL 597825, at *9 (S.D. Ohio Feb. 17, 2010) (Spiegel, J.) (the OMFWSA "contains requirements identical to those in the FLSA and incorporates the procedures and standards contained therein."). Therefore, the Court's determination that Bey has sufficiently pleaded her claims under the FLSA "appl[ies] equally to [Bey's] claims under the Ohio Minimum Fair Wage Standards Act." *Mitchell*, 428 F. Supp. 2d at 732.

However, the Walker Defendants are correct that, unlike the FLSA, the OMFWSA does not provide for liquidated damages. *Borda v. Sandusky Ltd.*, 850 N.E.2d 766, 771 (Ohio App. Ct. 2006). Bey's Amended Complaint expressly references liquidated damages as a remedy for violations of the OMFWSA in ¶ 78, and to the extent Bey asserts a claim for liquidated damages under the Ohio statute, that claim is dismissed. However, she also includes a request for liquidated damages under her general prayer for relief that is not expressly brought under either the OMFWSA or FLSA. (Doc. 49, Am. Compl. at 18, ¶ G). Because the FLSA *does* provide for liquidated damages, Bey may pursue those damages as part of her FLSA claim. 29 U.S.C. § 216(b).

### C.    Encore's Motion to Dismiss

Encore seeks dismissal on the basis that it was not Bey's employer and is therefore not liable for any unpaid overtime wages under the FLSA. As primary evidence, Encore relies on the Employment Contract attached to Bey's Amended Complaint, which refers to WalkerHealthCareIT as "employer" and refers to Encore as "client" (along with OhioHealth,

also referred to as "client"). (Doc. 49-2 at 1). The contract also describes a number of employer-related rights and responsibilities held by WalkerHealthCareIT (e.g., performing background checks (failure of which would permit WalkerHealthCareIT to "immediately dismiss[ ]" Bey); issuance of a W-2; calculation and payment of wages; reimbursement for work-related expenses; enforcement of attendance and travel policies; and Bey's agreement not to solicit or accept a contract to provide related services to the Client for a twelve-month period following the end date of her assignment with WalkerHealthCareIT). *Id.* at 1–2.

However, the Sixth Circuit has rejected the argument that "contractual intention [is] a dispositive consideration in our analysis. The reason is simple: The FLSA is designed to defeat rather than implement contractual arrangements." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 808 (6th Cir. 2015) (quoting *Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27, at *5 (6th Cir. 1998) (unpublished)). Rather, "[i]t is the 'economic reality' of the relationship between parties" that determines whether an employment relationship exists under the FLSA. *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011).

There being no dispute that WalkerHealthCareIT was Bey's employer, Bey may sufficiently allege liability against Encore in either of two ways. *Keeton v. Time Warner Cable, Inc.*, No. 2:09-CV-1085, 2011 WL 2618926, at *3 (S.D. Ohio July 1, 2011) (Marbley, J.) First, Bey may allege that she had a direct employment relationship with Encore, as determined by the "economic reality" test as set forth in *Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984); or, alternatively, she may allege that Encore and WalkerHealthCareIT are sufficiently interrelated in their business operations such that Encore was a "joint employer" along with WalkerHealthCareIT, as determined by the test set forth in *Int'l Longshoremen's Ass'n, AFL–CIO, Local Union No.1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991).

## 1.    Economic reality test

An entity employs an individual for the purpose of the FLSA if it "suffer[s] or permit[s that individual] to work."  29 U.S.C. § 203(g).  The Sixth Circuit has interpreted this provision, in light of the FLSA's broadly remedial purpose, to mean that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Keller*, 781 F.3d at 807 (quoting *Donovan*, 736 F.2d at 1116).  The Sixth Circuit has adopted a six-factor test to determine whether a given individual is, as a matter of economic reality, employed by the alleged employer.  For the purposes of this motion, this determination will depend on:

> (i)    the permanency of the relationship between Bey and Encore;
>
> (ii)   the degree of skill required of Bey for the rendering of the services;
>
> (iii)  Bey's investment in equipment or materials for the task;
>
> (iv)   Bey's opportunity for profit or loss, depending upon her skill;
>
> (v)    the degree of Encore's right to control the manner in which Bey's work is performed; and
>
> (vi)   whether the services rendered by Bey are an integral part of Encore's business.

*Keller*, 781 F.3d at 807.  No one factor is determinative, and each factor should be addressed "with an eye toward the ultimate question—[Bey's] economic dependence on or independence from [Encore]." *Id.*

The Court begins by noting that Bey's Amended Complaint is devoid of any allegations that would permit the Court to infer the degree of skill required, Bey's investment in equipment or materials, or whether Bey's services were an integral part of Encore's business.  The second, third, and sixth factors are therefore neutral.

Bey does provide some insight into the permanency of her relationship with Encore: she alleges that most assignments lasted a few weeks at a time. (Doc. 49, Am. Compl. ¶ 14). However, "even short, exclusive relationships between the worker and the company may be indicative of an employee-employer relationship." *Keller*, 781 F.3d at 807; s*ee also Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987) ("[H]owever temporary the relationship may be [between migrant workers and farm owner,] it is permanent and exclusive for the duration of that harvest season."). While Bey does not expressly allege that she worked exclusively on Encore's project during the relevant period, she alleges that she was scheduled to work at least 45 hours per week, which leaves little time for her to have engaged in other employment. (Doc. 49, Am. Comp. ¶ 21).

Bey's allegations also suggest she had little, if any, opportunity to control her own profits or losses. Her hours were allegedly scheduled by Encore, and she was paid (by WalkerHealthCareIT) based on time and expense reports approved by Encore. (*Id.* ¶¶ 15–16). In particular, she was paid only for her scheduled hours, even if she worked hours beyond those scheduled. (*Id.* ¶¶ 28, 34). Thus, Bey had no opportunity to increase her wages by working additional hours or taking on additional assignments. *Cf. Keller*, 781 F.3d at 812–13.

Finally, Encore concedes that Bey sufficiently alleges that it had the authority to manage Bey's day-to-day activities. (Doc. 52-1, Encore's Mot. at 14–15). Specifically, Bey alleges that Encore (1) conducted orientation and on-boarding activities, (2) conducted training on the use of Replicon (the software used by ATEs to record their hours worked), (3) determined her work schedule, (4) approved all ATE schedule changes, (5) instructed and enforced the required dress code, (6) resolved issues regarding transportation schedules, (7) resolved requests to transfer to a different area, (8) conducted calls and meetings, (9) reviewed, updated, and circulated

transportation schedules and approved alternative forms of transportation, (10) assigned her to a specific team manager/project manager to whom she reported and who assigned duties to her, (11) required her to remain on campus until her shift concluded and notify her team manager if she could not work as scheduled, and (12) evaluated the effectiveness of her work and could terminate her participation on a project. (Doc. 49, Am. Compl. ¶¶ 15–20). These allegations are sufficient to allege that Encore had a significant degree of control over the manner in which Bey's work was performed.

In sum, three of the six factors weigh in favor of finding Encore to be Bey's employer, and the remaining three factors are neutral. Encore also argues that Bey makes no allegations that Encore "was involved in making any decisions regarding Bey's compensation, that Encore was responsible for her compensation, or that Encore ever paid her anything." (Doc. 52-1, Encore's Mot. at 4). However, while Bey's allegations suggest WalkerHealthCareIT was the entity responsible for issuing Bey's paychecks, her allegations reflect considerable involvement by Encore in her compensation, in that she was paid only for the hours scheduled and approved by Encore.

Given the FLSA's broadly remedial purpose and the Sixth Circuit's directive that "[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case," *Dole,* 942 F.2d at 965, the Court finds that Bey has sufficiently alleged that Encore was her employer as a matter of economic reality for purposes of the FLSA.

### 2. Joint employer test

Bey may also satisfy her pleading obligations with regard to Encore by alleging that it had interrelated operations with Bey's undisputed employer, WalkerHealthCareIT. The Sixth Circuit has not enumerated a test for assessing whether two entities are joint employers for the

purpose of the FLSA, *Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1180–81 (E.D. Ky. 2016), but courts in this District have adopted a four-factor test used by the Sixth Circuit in making joint employer determinations in the context of the National Labor Relations Act. *Keeton*, 2011 WL 2618926 at *3 (quoting *Int'l Longshoremen,* 927 F.2d at 902); *Heard v. Nielson*, No. 1:16-CV-1002, 2017 WL 2426683, at *3 (S.D. Ohio June 2, 2017) (Black, J.); *Pineda v. Pit Columbus, LLC*, No. 2:17-CV-668, 2017 WL 5900559, at *2 (S.D. Ohio Nov. 28, 2017) (Sargus, J.). The four factors to be considered are:

> (i)    the interrelation of operations between the companies;
>
> (ii)   common management;
>
> (iii)  centralized control of labor relations, and
>
> (iv)   common ownership.

*Keeton*, 2011 WL 2618926 at *7.

Bey has not included allegations relevant to any of these factors in her Amended Complaint. While she repeatedly alleges that WalkerHealthCareIT and Encore engaged in a "joint business effort," that conclusory label is not sufficient to plausibly suggest that the two companies had interrelated operations, common management, centralized control of labor relations, or common ownership. And while Bey specifically alleges that Tifiany Walker and George Walker had ownership and operational control of WalkerHealthCareIT, she makes no analogous claims regarding the ownership or control of Encore. The Court therefore finds that Bey has not sufficiently alleged that Encore is liable for FLSA violations based on a joint-employer theory. However, because Bey has sufficiently alleged a direct employment relationship with Encore based on the economic reality test, her claims against Encore will not be dismissed.

## IV.   WALKER DEFENDANTS' MOTION TO STRIKE

The Walker Defendants also moved to strike the consent forms that Bey has filed on behalf of other ATEs wishing to join her proposed collective action under the FLSA.  (Doc. 64). The Walker Defendants argue that other ATEs cannot become parties to this action by filing consent forms before the Court conditionally certifies the collective action, and that Bey has not sought leave to join the other ATEs as plaintiffs under Federal Rule of Civil Procedure 20, which otherwise governs joinder of parties.  As a result, the Walker Defendants argue, the consent forms that Bey has already filed must be stricken and Bey must be enjoined from filing any further such consent forms unless and until the Court grants conditional certification of the collective action.

In response, Bey cites a recent Eleventh Circuit decision that determined that filing a consent form is sufficient to confer party plaintiff status on the individual consenting to join the collective action, even if the representative plaintiff has not yet moved for conditional certification. *Mickles v. Country Club Inc.*, No. 16-17484, ___ F. 3d ___, 2018 WL 1835316, at *5 (11th Cir. Apr. 18, 2018).  That court noted that "[t]his is a question of first impression in every Circuit" and Bey therefore urges the Court to follow the only currently available Circuit-level precedent.  *Id.* at *4.  But ultimately, this Court need not decide at this time whether to follow the Eleventh Circuit's lead, because the relief sought by the Walker Defendants' motion is merely to strike the consent forms, and not to take any other action on the basis that the individuals who executed them are not proper parties to the action.

The Walker Defendants have not offered any authority prohibiting representative plaintiffs from filing consent forms prior to conditional certification of the collective action.  In fact, a review of FLSA cases in this Circuit reflects that this practice is commonplace.  *Struck v. PNC Bank N.A.*, No. 2:11-CV-00982, 2013 WL 571849, at *1 (S.D. Ohio Feb. 13, 2013)

(Marbley, J.) (45 opt-in plaintiffs filed consent forms prior to the representative plaintiff's motion for conditional certification); *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1067 (S.D. Ohio 2016) (some of the consent forms for the 37 opt-in plaintiffs were filed prior to the motion for conditional certification); *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 211 (S.D. Ohio 2011) (some of the consent forms for the 22 opt-in plaintiffs were filed prior to the motion for conditional certification); *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1067 (M.D. Tenn. 2015) (some of the consent forms for the over 100 opt-in plaintiffs were filed prior to the motion for conditional certification). In most of these cases, the representative plaintiff began to file consent forms even before the defendant had answered.

Thus, the relevant case law implies that Bey need not make a showing that the other ATEs are similarly situated, or are proper parties under Rule 20, before filing the consent forms. Accordingly, there is no reason to strike the existing consent forms or enjoin Bey from filing additional consent forms. The Walker Defendants' Motion to Strike is therefore **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, the Walker Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. To the extent Bey's Amended Complaint asserts claims for injunctive relief under the FLSA or liquidated damages under the OMFWSA, those claims are **DISMISSED**. All other claims against the Walker Defendants remain pending.

Further, Encore's Motion to Dismiss is **DENIED**.

Further, the Walker Defendants' Motion to Strike is **DENIED**.

The Clerk shall remove Documents 51, 52, and 64 from the Court's pending motions list.

**IT IS SO ORDERED.**

   */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**